1

2

3

4

5

6

7

8                        **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   RAY LEE VAUGHN,                        CASE NO. CV-F-01-5241 OWW DLB HC

12                    Petitioner,           AMENDED AND CORRECTED
                                            FINDINGS AND RECOMMENDATIONS
13                                          REGARDING PROCEDURAL DEFAULT

14        vs.                               [Docs. 40, 50, 53, 55]

     D. ADAMS,
15
                     Respondent.
16   _____/

17

18        Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28

     U.S.C. § 2254.  Petitioner is represented by Allison Claire of the Office of the Federal Defender.[1]
19
                                    PROCEDURAL HISTORY
20
          Petitioner filed the instant petition for writ of habeas corpus in this Court on February 28,
21
     2001.  On March 24, 2003, the undersigned issued Findings and Recommendations recommending
22
     that the instant petition be denied as procedurally defaulted and on the merits.  (Court Doc. 20.)  The
23
     Findings and Recommendations were adopted in full on May 13, 2003, and judgment was entered in
24
     favor of Respondent.  Petitioner filed a notice of appeal with the United States Court of Appeals for
25
     the Ninth Circuit, and the case was remanded by order filed November 3, 2004, for this Court to
26
     apply the burden-shifting analysis pursuant to Bennett v. Mueller, 322 F.3d 573, 587 (9th Cir. 2003).
27

28        _____

          [1]  This Court appointed counsel by order filed January 18, 2005.  (Court Doc. 39.)

                                              1

1    Pursuant to this Court's order, Respondent filed supplemental briefing on the issue of

2  procedural default on February 24, 2005.  (Court Doc. 40.)  Petitioner filed its brief regarding

3  procedural default on August 11, 2005.[2]  (Court Doc. 50.)  Respondent filed a reply to Petitioner's

4  brief on October 14, 2005. (Court Doc. 53.)

5    On April 24, 2006, Petitioner filed a motion for immediate release.[3]  (Court Doc. 56.)

6                                    DISCUSSION

7    A federal court will not review claims in a petition for writ of habeas corpus if the state court

8  has denied relief on those claims by a state law that is independent of federal law and adequate to

9  support the judgment.  A federal court will not review a petitioner's claims if the state court has

10  denied relief of those claims pursuant to a state law that is independent of federal law and adequate

11  to support the judgment.  Ylst v. Nunnemaker, 501 U.S. 797, 801, 111 S.Ct. 2590, 2592 (1991);

12  Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S.Ct. 2546, 2553-54 (1989); See also Fox Film

13  Corp. v. Muller, 296 U.S. 207, 210, 56 S.Ct. 183, 184 (1935).  A state court's refusal to hear the

14  merits of a claim because of petitioner's failure to follow a state procedural rule is considered a

15  denial of relief on independent and adequate state grounds.  Harris v. Reed, 489 U.S. 255, 260-61,

16  109 S.Ct. 1038, 1042 (1989).  This doctrine of procedural default is based on the concerns of comity

17  and federalism. Coleman, 501 U.S. at 730-32, 111 S.Ct. at 2554-55.

18    A federal court may only impose a procedural bar on claims if the procedural rule that the

19  state used to deny relief is "firmly established and regularly followed."  O'Dell v. Thompson, 502

20  U.S. 995, 998, 112 S.Ct. 618, 620 (1991) (statement of Blackmun joined by Stevens and O'Connor

21  respecting the denial of certiorari); Ford v. Georgia, 498 U.S. 411, 423-24, 111 S.Ct. 850, 857

22  (1991); James v. Kentucky, 466 U.S. 341, 348-51, 104 S.Ct. 1830, 1835-37 (1984).  The state

23  procedural rule used must be clear, consistently applied, and well-established at the time of the

24  petitioner's purported default.  Fields v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997); Calderon v.

25  United States Dist. Court (Bean), 96 F.3d 112, 129 (9th Cir. 1996), cert. denied, 117 S.Ct. 1569.

26  _____

27    [2] Petitioner submitted supplemental exhibits on October 18, 2005.  (Court Doc. 55.)

28    [3] A first amended motion for immediate release was filed on April 25, 2006, which correctly noticed the hearing
before the undersigned on June 16, 2006, at 9:00 a.m.  (Court Doc. 57.)

1    In <u>Bennett v. Mueller</u>, 322 F.3d 573, 585-86 (9th Cir. 2003), the Ninth Circuit Court of

2    Appeals held that:

3        the ultimate burden of proving the adequacy of the California state bar is upon the State of California. . . . Once the state has adequately pled the existence of an
4    independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner.  The petitioner may
5    satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating
6    inconsistent application of the rule.  Once having done so, however, the ultimate burden is the state's.  Accordingly, because it is the State who seeks dismissal based
7    on the procedural bar, it is the State who must bear the burden of demonstrating that the bar is applicable. . . .

8

9        To be deemed adequate, the state law ground for decision must be both well-established and

10   consistently applied.  <u>Poland v. Stewart</u>, 169 F.3d 573, 577 (9th Cir. 1999) ("A state procedural rule

11   constitutes an adequate bar to federal court review if it was 'firmly established and regularly

12   followed' at the time it was applied by the state court.")(<i>quoting</i> <u>Ford v. Georgia</u>, 498 U.S. 411, 424,

13   111 S.Ct. 850 (1991)).  Although a state court's exercise of judicial discretion will not necessarily

14   render a rule inadequate, the discretion must entail "'the exercise of judgment according to standards

15   that, at least over time, can become known and understood within reasonable operating limits.'"  <u>Id.</u>

16   at 377 (<i>quoting</i> <u>Morales</u>, 85 F.3d at 1392).  "State rules that are too inconsistently or arbitrarily

17   applied to bar federal review 'generally fall into two categories: (1) rules that have been selectively

18   applied to bar the claims of certain litigants . . . and (2) rules that are so unsettled due to ambiguous

19   or changing state authority that applying them to bar a litigant's claim is unfair.'"  <u>Bennett v.</u>

20   <u>Mueller</u>, 322 F.3d at 583 (quoting <u>Woods v. Hall</u>, 130 F.3d 373, 377 (9th Cir. 1997).

21       A.    <u>Well-Established</u>

22           1.    <u>Respondent's Initial Burden of Pleading Existence of Procedural Bar</u>

23       Applying the burden-shifting approach outlined in <u>Bennett</u>, it is undisputed that Respondent

24   has met its initial burden of pleading the existence of the Dixon procedural bar in this case.  When

25   the California Supreme Court denied the petition on August 9, 2000, the Court cited <u>In Re Dixon</u>, 41

26   Cal.3d 756 (1953).  Dixon can bar federal review where the claimed errors could have been, but were

27   not raised in a habeas petition on direct appeal from conviction, unless the claims fall within an

28

3

1  exception to the rule.  <u>Dixon</u>, 41 Cal.2d at 759-60.[4]  The Court therefore found the case procedurally

2  barred under state law.

3          At issue is whether the <u>Dixon</u> rule, at the time of Petitioner's default, i.e. November 12,

4  1997, was well-established and consistently applied.[5]

5          In <u>Park v. California</u>, 202 F.3d 1146 (9th Cir. 2000), the Ninth Circuit Court of Appeals

6  analyzed California's time limitations on filing habeas corpus petitions and the Dixon rule, and

7  stated that prior to 1993, the procedural bars were "undefined and imprecise."  <u>Id</u>. at 1151-53.  The

8  Ninth Circuit therefore concluded that the state procedural bars were neither well-established nor

9  consistently applied prior to 1993.  <u>Id</u>.  The Court did note, however, that the California Supreme

10  Court's decisions in <u>In re Clark</u>, 5 Cal.4th 750 (1993) and <u>In re Harris</u>, 5 Cal.4th 813 (1993) "were

11  intended to 'reestablish California's procedural rules governing state habeas petitions and clearly

12  define and limit the applicable exceptions.'"  <u>Id</u>. at 1151-52 (quoting <u>Fields v. Calderon</u>, 125 F.3d

13  757 (9th Cir. 1997).

14          More specifically, in 1993, in <u>In re Harris</u>, the California Supreme Court stated:

15                  Proper appellate procedure thus demands that, absent strong justification,
        issues that could be raised on appeal must initially be so presented, and not on habeas
16      corpus in the first instance.  Accordingly, an unjustified failure to present an issue on
        appeal will generally preclude its consideration in a postconviction petition for a writ
17      of habeas corpus.  (*Dixon*, *supra*, 41 Cal.2d 756.)  "[H]abeas corpus cannot serve as a
        substitute for an appeal, and, in the absence of special circumstances constituting an
18      excuse for failure to employ that remedy, the writ will not lie where the claimed errors
        could have been, but were not, raised upon a timely appeal from a judgment. . . ."  (*Id*.
19      at p. 759, citations omitted.)

20  <u>In re Harris</u>, 5 Cal.4th 813, 829 (1993).

21          Harris also identified four exceptions to the Dixon bar which will allow a reviewing court to

22  reach the merits of an otherwise defaulted habeas claim.  They are: 1) claims alleging a clear and

23  _____

24      [4]  The four exceptions are:
                A.      Fundamental constitutional error;
25              B.      Lack of fundamental jurisdiction by the trial court over petitioner
                C.      The trial court's acting in excess of jurisdiction; and
26              D.      An intervening change in the law

27      [5]  Pursuant to the Ninth Circuit Court of Appeals' order, because Petitioner's state habeas corpus petition was denied
    by the California Supreme Court on August 9, 2000, well after <u>In re Robbins</u> was decided, the California Supreme Court's
    denial of Petitioner's habeas petition was necessarily predicated only upon consideration of state law issues, rendering the
28  ruling an independent procedural bar. (Court Doc. 37, at 2.)  Therefore, the independence prong is established.

1   fundamental constitutional violation that strikes at the heart of the trial process; 2) claims alleging a

2   lack of fundamental jurisdiction; 3) claims alleging that the trial court acted in excess of its

3   jurisdiction; and 4) claims alleging that a change in the law effects the prisoner's case.  In re Harris, 5

4   Cal.4th at 829-41 [stating exceptions to the Waltreus bar].

5        Given the longstanding tenure of the 1953 Dixon rule, it is unquestionable that the rule was

6   well-established, particularly given that the instant default occurred in 1997, well over forty years

7   after the rule was established.  However, the adequacy prong is two-fold, which also entails a

8   determination whether the procedural bar was, in actual practice, consistently applied.  Powell v.

9   Lambert, 357 F.3d 871, 879 (9th Cir. 2004); see also Ford v. Georgia, 498 U.S. at 423-24

10       B.   Consistently Applied

11            1.   Petitioner's Interim Burden of Placing Procedural Bar In Issue

12       In Bennett, the Ninth Circuit Court of Appeals, agreeing with the Tenth Circuit stated:

13            Once the state pleads the affirmative defense of an independent and adequate
             state procedural bar, the burden to place that defense in issue shifts to the petitioner.
14           This must be done, at a minimum, by specific allegations by the petitioner as to the
             adequacy of the state procedure.  The scope of the state's burden of proof thereafter
15           will be measured by the specific claims of inadequacy put forth by the petitioner."

16   Bennett, at 584-585 (quoting Hooks v. Ward, 184 F.3d 1206 (10th Cir. 1999).)

17       The Northern District of California in a capital habeas case, has stated that Petitioner's

18   burden "is quite modest: at most, Petitioner need only assert allegations; he does not need to prove

19   anything."  Dennis v. Brown, 361 F.Supp.2d 1124, 1130 (N.D. Cal. 2005).  "In determining whether

20   the parties have met their respective burdens, the Court is not limited to reviewing published state

21   court decisions.  Rather, it is the 'actual practice of the state courts, not merely the precedents

22   contained in their procedural bars preventing the assertion of federal rights.'"  Bennett v. Mueller,

23   364 F.Supp.2d 1160, 1168 (C.D. Cal. 2005), on remand from Bennett v. Mueller, 322 F.3d 573

24   (quoting and citing Powell v. Lambert, 357 F.3d 871, 879 (9th Cir. 2004).  In Powell v. Lambert, the

25   Ninth Circuit held that a federal habeas court may consider both published and unpublished state

26   court decisions in analyzing the adequacy of the procedural bar.  357 F.3d at 879.  In Bennett, the

27   Ninth Circuit also cautioned that analysis of the adequacy issue should be limited to consideration of

28   the "language of the state court opinions."  See Bennett, 322 F.3d at 548 (citation omitted.)

5

1    "In determining the adequacy of the procedural bar, state cases applying the procedural bar

2    after the time of the petitioner's default are irrelevant.  Bennett v. Mueller, 364 F.Supp.3d at 1167

3    (citing Cockett v. Ray, 333 F.3d 938, 943 (9th Cir. 2003).)  Here, the relevant time period of

4    Petitioner's post-Dixon default is November 12, 1997, the date Petitioner filed his direct appeal with

5    the Court of Appeal.

6         To meet his burden of demonstrating inadequacy of the state procedure, Petitioner cites

7    fourteen cases wherein the California Supreme Court issued a silent "postcard" denial, without

8    reference to the Dixon bar, despite the fact that the Petitioners had failed to raise all the claims in the

9    direct appeal.

10        In reviewing the fourteen cases cited by Petitioner, five were denied prior to November 12,

11   1997, and the remaining nine were denied after November 12, 1997; seven were denied on

12   November 25, 1997.  More specifically:

13        In In re Pack, 1997 Cal. LEXIS 5377 (Cal. Aug. 27, 1997); In re Metcalf, 1997 Cal. LEXIS

14   5851 (Cal. Sept. 17, 1997); In re Washington, 1997 Cal. LEXIS 5362 (Cal. Aug. 27, 1997); In re

15   Killian, 1997 Cal. LEXIS 5696 (Cal. Sept. 17, 1997); In re Carson, 1997 Cal. LEXIS 5381 (Cal.

16   Aug. 27, 1997), the Petitioner's raised claim(s) in their state habeas corpus petitions that could have

17   been, but were not, raised in their direct appeals, and the California Supreme Court nonetheless,

18   issued a summary "post-card" denial.  All these cases were issued just prior to Petitioner's

19   November 12, 1997, denial.

20        Approximately two weeks after the Petitioner's November 12, 1997, denial, the California

21   Supreme Court issued summary denials in seven more cases, in which the petitioner's raised claim(s)

22   in their state habeas corpus petitions that could have been, but were not, raised in their direct appeals.

23   See In re Burkett, 1997 Cal. LEXIS 8124 (Cal. Nov. 25, 1997); In re Hall, 1997 Cal. LEXIS 8073

24   (Cal. Nov. 25, 1997); In re Jones, 1997 Cal. LEXIS 8064 (Cal. Nov. 25, 1997); In re Quill, 1997 Cal.

25   LEXIS 8081 (Cal. Nov. 25, 1997); In re Valdez, 1997 Cal. LEXIS 8135 (Cal. Nov. 25, 1997).

26        Thereafter in 1998, the California Supreme Court again issued summary denials where the

27   petitioner raised claims in the state habeas corpus petition that were not raised on direct appeal.  See

28   In re Gregory, 1998 Cal. LEXIS 8376 (Cal. Dec. 22, 1998); In re Kanda, 1998 Cal. LEXIS 7676

6

1   (Cal. Nov. 24, 1998).

2      At a minimum, Petitioner has produced five cases in which just months prior to the instant

3   default, the California Supreme Court summarily denied petitions without a citation to In re Dixon,

4   wherein claims that were not raised on direct appeal were raised on state habeas corpus. The Court

5   finds this is sufficient to met Petitioner's burden of placing the inadequacy of the procedural bar in

6   issue. See Bennett, 322 F.3d at 586 (petitioner need only assert specific factual allegations that

7   demonstrate the inadequacy of the Dixon rule, including citations to authority demonstrating an

8   inconsistent application of the Dixon rule as of November 12, 1997.)[6]  In sum, the fact that

9   Petitioner's habeas corpus petition was denied by the California Supreme Court with a specific

10  citation to In re Dixon, whereas during the relevant time period, the California Supreme Court denied

11  several other petitions without any citation at all, demonstrates inconsistent application on the face of

12  the decisions.

13     The fact that Petitioner relies on "post-card" denials by the California Supreme Court to

14  support his burden in demonstrating inadequacy, does not diminish its value, and Respondent's

15  contention to the contrary is rejected.  In Morales v. Calderon, 85 F.3d 1387 (9th Cir. 1996), the

16  Ninth Circuit cited the petitioner's evidence of 35 post-card denials in concluding that the petitioner

17  had demonstrated inconsistent application of California's timeliness bar in a pre-In Re Clark capital

18  case.  The court noted:

19          It is theoretically possible, we suppose, to reconcile and explain all of the
           California Supreme Court decisions entertaining on the merits or rejecting as untimely
20         petitions that are three or more years old.  Those divergent decisions may indeed
           represent consistent exercises of discretion rather than random applications of or
21         exceptions to the timeliness rule.  But we have no way of knowing whether that is the
           case.  The California Supreme Court's denials of habeas petitions that Morales relies
22         upon were accomplished by brief minute entries in what has been described as "post-
           card denial."  We can discern no apparent relationship between the time of delay and
23         the findings concerning timeliness.  Nor could Morales be expected to do so.

24  Id. at 1392.  See also Dennis v. Brown, 361 F.Supp.2d 1124 (N.D. Cal. 2005); Douglas v. Cambra,

25  2005 WL 2072003 (E.D. Cal. 2005).

26

27        [6] Although the subsequent denials issued after the time of default in this case, are not necessarily dispositive, they
    are however persuasive and confirm, that the California Supreme Court was not consistently applying the Dixon procedural
28  bar, at the time of Petitioner's default.

7

1   Therefore, Petitioner's allegations place the adequacy of the Dixon bar in issue, and the

2   burden now shifts to Respondent to prove that the Dixon bar was consistently applied at the time of

3   Petitioner's default.

4                   2.       Respondent's Ultimate Burden of Proving Adequacy of Procedural Bar

5           As set forth by Respondent in its return, although the Bennett court did not explicitly define

6   the scope of the state's ultimate burden, the Ninth Circuit did indicate that the scope would depend

7   on the nature and depth of a petitioner's allegations.  Bennett, 322 F.3d at 584-85, quoting Hooks v.

8   Ward, 184 F.3d 1206, 1217 (10th Cir. 1999).  Respondent's reliance on In re Harris, 5 Cal.4th 813,

9   829 (1993) and In re Robbins, 18 Cal.4th 770, 814 (1998), to establish that the California Supreme

10  Court has consistently applied the Dixon bar is without merit.  Respondent's argument has merit as

11  to the Dixon bar being well-established at the time of Petitioner's default.  That argument, however,

12  simply does not overcome Petitioner's specific factual allegations of inconsistent application, nor

13  does it demonstrate that the California Supreme Court consistently applied the Dixon bar to habeas

14  petitions as of November 12, 1997.  Under the burden-shifting analysis set forth in Bennett, neither

15  In re Harris nor In re Robbins establish that the Dixon bar was consistently applied by the California

16  Supreme Court.  Moreover, as stated in Bennett, "Because the California Supreme Court set out to

17  create a rule that would be consistently applied, however, it does not follow that the rule in historical

18  fact has been so applied."  Bennett, at 583.  Further, it is the "actual practice of the state court, not

19  merely the precedents contained in their published opinions, that determine the adequacy of

20  procedural bars preventing the assertion of federal rights."  Powell v. Lambert, 357 F.3d at 879; see

21  also Ford v. Georgia, 498 U.S. at 423-24 (only a "firmly established and regularly followed state

22  practice: will suffice as a procedural bar).

23          Respondent's reliance on Protsman v. Pliler, 318 F.Supp.2d 1004 (S.D. Cal. 2004), is

24  unpersuasive.  Even if Protsman v. Pliler were binding authority on this Court, Protsman is

25  distinguishable.  In Protsman, the Southern District of California, found the Dixon bar adequate,

26  because the Petitioner had utterly failed to meet his burden of demonstrating the inadequacy of the

27  bar.  And when the Protsman Court stated that Harris was intended to make application of the Dixon

28  bar consistent among California Courts, it did so in the context of Respondent meeting its initial

1  burden of pleading an adequate procedural bar.  The Protsman Court never reached the third step of

2  the Bennett analysis.   Respondent simply has not met its "ultimate" burden that the Dixon bar was,

3  in fact, consistently applied at the time of Petitioner's default.

4  Therefore, because Respondent has not met his burden of proving that the Dixon bar was

5  consistently applied as of November 12, 1997, Petitioner's single claim is not procedurally defaulted

6  and the Court must proceed to the merits of the claim.

7  RECOMMENDATION

8  Based on the foregoing, it is HEREBY RECOMMENDED that:

9  1.  The single claim raised in the instant petition for writ of habeas corpus is not

10  procedurally defaulted; and

11  2.  The State shall be directed to file an answer to the instant petition within thirty days

12  from the date the instant recommendation is resolved by the District Judge.

13  These Findings and Recommendations are submitted to the assigned United States District

14  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the

15  Local Rules of Practice for the United States District Court, Eastern District of California.  Within

16  **fifteen (15)** days after being served with a copy, any party may file written objections with the court

17  and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate

18  Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within

19  **five (5)** court days after service of the objections.  The Court will then review the Magistrate Judge's

20  ruling pursuant to 28 U.S.C. § 636 (b)(1)(c).  The parties are advised that failure to file objections

21  within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst,

22  951 F.2d 1153 (9th Cir. 1991).

23  IT IS SO ORDERED.

24  **Dated:   May 22, 2006**                    **/s/ Dennis L. Beck**

3b142a                                                      UNITED STATES MAGISTRATE JUDGE

25

26

27

28

9