IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY LEE VAUGHN,<br><br>    Petitioner,<br><br>    vs.<br><br>D. ADAMS,<br><br>    Respondent.<br>_____/ | CASE NO. CV-F-01-5241 OWW DLB HC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS AND RECOMMENDING THAT PETITIONER'S MOTION FOR IMMEDIATE RELEASE BE DENIED<br><br>[Doc. 1, 56] |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

PROCEDURAL HISTORY

Petitioner is confined by virtue of a judgment and sentence of the Superior Court of the State of California, County of Kern, entered July 14, 1997, following his conviction of two counts of forcible lewd and lascivious conduct, one count of burglary and one count of child molestation, as a misdemeanor.

On July 16, 1997, Petitioner was sentenced to life with the possibility of parole for one of the lewd and lascivious conduct convictions, and eight years on the other lewd and lascivious conduct convictions. (CT 369.) The sentence on the burglary conviction was stayed pursuant to section 654. (Id.)

On November 12, 1997, Petitioner filed a notice of appeal with the California Court of

1  Appeal, Fifth Appellate District.  On August 17, 1999, the Court of Appeal affirmed the judgment.

2        On August 27, 1999, Petitioner filed a petition for review with the California Supreme Court.

3  The petition was denied on November 17, 1999.

4        On May 8, 2000, Petitioner filed a petition for writ of habeas corpus with the California

5  Supreme Court.

6        On August 9, 2000, the California Supreme Court denied the petition.

7        On February 24, 2001, Petitioner filed the instant petition for writ of habeas corpus.

8        Respondent filed an answer to the petition on January 23, 2002, and Petitioner filed a traverse

9  on February 21, 2002.  On May 13, 2003, the petition was denied on the merits as the Findings and

10  Recommendations of March 24, 2003, were adopted in full.  (Court Docs. 20, 22, 23.)

11        Petitioner filed a notice of appeal with the United States Court of Appeals for the Ninth

12  Circuit.  On November 3, 2004, the Ninth Circuit vacated and remanded the action in light of its

13  recent decision in Bennett v. Mueller, 322 F.3d 573 (9th Cir. 2003).

14        On May 8, 2006, the undersigned issued Findings and Recommendations recommending that

15  the claim of procedural default be rejected.[1]  (Court Doc. 58.)  The Findings and Recommendations

16  were adopted in full on June 26, 2006.  (Court Doc. 64.)

17        Respondent filed an amended answer to the petition on July 24, 2006, and Petitioner filed an

18  amended traverse on August 2, 2006.  (Court Docs. 65, 66.)

19                           STATEMENT OF FACTS[2]

> [Petitioner] had been a friend of Sarina M.'s family for more than 10 years and lived in a converted garage at their family home on Churchill Drive in Bakersfield. Although the room was attached to the four-bedroom house, there was no direct access between the house and the converted room. [Petitioner] did not pay rent for the room and was treated "like part of the family."
>
> On the evening of October 11, 1996, Sarina's parents, Henry and Cynthia, went to bed leaving seven-year old Sarina, her twin sister Sabrina, and their younger sister Monea in the living room to watch television.  The children eventually fell asleep on some mattresses which had been placed on the floor.
>
> In the early morning hours, Sarina awakened. [Petitioner] had climbed through the window of the living room.  A television set was located under the window and a

---

[1] On May 22, 2006, the Court issued an Amended Findings and Recommendations.  (Court Doc. 61.)

[2] The Court finds the Court of Appeal correctly summarized the facts in its August 17, 1999, opinion.  Thus, the Court adopts the factual recitations set forth by the California Court of Appeal, Fifth Appellate District.

fan rested on the television set. [Petitioner] apparently climbed onto the television set, put the fan on the floor, and picked Sarina up off the mattresses and carried her to a couch. [Petitioner] was wearing a jacket pulled up over his head and covering most of his face. Sarina nevertheless recognized [Petitioner's] eyes, nose and voice. [Petitioner] placed Sarina's stomach down on the couch and pulled down her shorts and underclothes to her knees. He told her he would kill her parents if she said anything.[3]

[Petitioner] placed a finger into Sarina's anus, unzipped his pants and then rubbed his penis on her buttocks. Sarina told [Petitioner] she had to use the bathroom. [Petitioner] said, "'Don't go in your dad's room.'" He also said he would kill her parents if she said anything to them. [Petitioner] then let Sarina go the bathroom.

When Sarina returned to the family room, she observed [Petitioner] removing the clothing of her younger sister Monea. The girls' father, who was sleeping in a back bedroom, coughed and [Petitioner] got up and left the house through the front door. Sarina testified she went into her parents' bedroom and woke them up. Henry testified he got up to go to the bathroom sometime between one and two in the morning. He saw Sarina come out of the bathroom crying and asked her what was wrong. She said, "'Daddy, if I tell you, you won't tell nobody.'" Sarina told Henry something about [Petitioner] coming through the window. When Henry went to bed at about 11 p.m. he shut the window to the family room and left the lights on for the children. Cynthia said Henry secured the house that evening and she rechecked all the windows. She also said they left the hallway lights, kitchen lights and television on. Henry testified he awakened in the early morning and "the window was open and the lights were out." Although the window to the family had a broken latch or hasp, Henry closed the window before retiring for the night. Cynthia explained, "You could lock it [the family room window] down but it was easy to open." Cynthia also testified a fan was located on top of the television set when she and Henry went to bed. The next morning, according to Cynthia, the fan was sitting on the side of the TV on the floor and the hall lights were off and the kitchen light was off.

Sarina's father went to [Petitioner's] room and confronted him. Henry testified, "I just wanted to know why did he go through the window because he could have knocked on the door. He didn't have to go through the window." [Petitioner] denied that anything happened and then left the premises. When Sarina's father returned to the main part of the house, Cynthia told him about "what Ray had did to my daughter." Henry went back to again confront [Petitioner] but he had departed. Henry said Cynthia contacted Bakersfield police between 2:30 and 3 a.m. and they arrived about one hour later. Bakersfield Police Officer Ed Usury initially testified he was dispatched to the scene at 3:15 a.m. but later said he was dispatched at 7:15 a.m. Usury prepared a report quoting Sarina as saying, "'Sarina told Usury that [Petitioner] had fondled her genital area and inserted his finger in her anus. Bakersfield Police Detective Mickey Moyer spoke to Sarina at the police station at 10 a.m. He testified in relevant part:

"She [Sarina] indicated on the previous night she had gone to bed on a mattress in the living room on the floor. She had gone to bed at approximately ten p.m. with the other two sisters, all three on the mattress and lights on in the living-room and the television was on and sometime during the night she was awakened by Ray and when she was awakened by Ray, he had a dark blue jacket up over his head exposing just his nose and eye area, that Ray carried her to the couch in the living room and as he was carrying her, told her that if she did

---

[3] On direct examination in the People's case-in-chief, Sarina testified that [Petitioner] said, "'I will kill'em.'" She later denied such a statement but, upon further questioning, quoted [Petitioner] as saying, "He would kill'em."

>           not let him do what he wanted to do with her, he would take a knife
>           and kill her mommy and daddy, laid her down on her stomach on the
>           couch and removed her shorts and panties and after that he placed a
>           finger in her behind and unzipped his pants and began rubbing his
>           private on her behind area."
>
>           Henry M. testified [Petitioner] generally had permission to enter the
>    family residence.  Henry added, "[He] had no right to come in the house after we go
>    to bed."  Cynthia M. testified [Petitioner] had frequently been in their home and she
>    had gotten angry with him once for disciplining her daughters.  Henry told [Petitioner]
>    to "get away" when he was hanging around the widow with the broken latch earlier in
>    the evening.
>           The parties stipulated that [Petitioner's] 15-year-old daughter Tanisha would
>    testify to a molestation which occurred when she was 7 years old.  Tanisha would
>    testify that [Petitioner] came to her room in the middle of the evening, pulled down
>    her panties and fondled her vagina.  Tanisha cried and her mother came in the room.
>    [Petitioner] pushed her mother against the wall and told her not to ask any more
>    questions.
>    Defense
>           [Petitioner's] brother, Ocla Vaughn, Jr., testified on behalf of the defense.
>    Ocla said he was at the M. family home on the evening of October 11, 1996, drinking
>    beer and "messing around."  Ocla was with [Petitioner] until 11:45 p.m.  At that
>    point, the brothers had an argument, [Petitioner] smashed a beer bottle, and Ocla
>    departed. [Petitioner] said he was going to call his girlfriend to pick him up.  Ocla was
>    familiar with the window which appeared to be the point of entry.  Ocla testified the
>    window, which he observed to be closed that night, has an interior crank with gears
>    and cannot be opened from the outside.

(Exhibit E, attached to Original Answer, at 3-6.)

## DISCUSSION

I.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of the Kern Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.   Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal

1  conviction is the primary method for a petitioner to challenge that conviction. Brecht v.
2  Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual
3  determinations must be presumed correct, and the federal court must accept all factual findings made
4  by the state court unless the petitioner can rebut "the presumption of correctness by clear and
5  convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769
6  (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380,
7  1388 (9th Cir. 1997).

8         The court looks to the last reasoned state court decision as to the basis for the state court
9  judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002) (citing Ylst v. Nunnemaker, 501 U.S.
10 797, 803-04 (1991)). Where, as here, the state court provides no reasoning to support its conclusion,
11 a federal habeas court independently reviews the record to determine whether habeas corpus relief is
12 available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

13 III.    Trial Court's Instruction - CALJIC 2.50.01

14      A.    Application of Gibson v. Ortiz

15        Petitioner argues that CALJIC No. 2.50.01, when read in conjunction with CALJIC No.
16 2.50.1, violated his constitutional right to due process because it permitted the jury to convict
17 Petitioner based on his prior crimes without finding that all the elements of the charged offense were
18 proved beyond a reasonable doubt. (Petition, at 6-7.)

19        At trial, the judge notified the jury of the following stipulation between Petitioner and the
20 prosecution:

21 > [I]t is hereby stipulated by both counsel, [Petitioner], has a fifteen-year-old
> daughter, Tanisha. If called to testify, Tanisha would testify to the fact when Tanisha
22 > was seven years old, she was awakened in the middle of the night by her father, the
> Defendant, Ray Lee Vaughn, rubbing her legs. The Defendant then pulled down her
23 > panties and was fondling her vagina. Tanisha began crying and her mother tried to
> come to her, but her father, the Defendant, pushed her mother against the wall and
24 > told her not to ask any more questions. They then began arguing. The matter was
> reported to the police. [. . .] That is to be regarded as conclusively proven.
25

26 (RT 171-172.)

27        The trial court read CALJIC No. 2.50.01 as follows:

28 > Evidence has been introduced for the purpose of showing or attempting to
> show that the defendant engaged in a sexual offense other than those charged in the

case. Sexual offense means a crime under the law of the state or of the United States that involves any of the following: Any conduct made criminal by Penal Code section 288(a). The elements of this crime are set forth elsewhere in these instructions. If you find that the defendant committed a prior sexual offense, you may, but are not required to infer that the defendant had a disposition to commit the same or similar type sexual offense. If you find the defendant had this disposition, you may, but are not required to infer that he was likely to commit and did commit the crimes of which he is accused.

(RT 233.)

The trial court also instructed the jury pursuant to CALJIC 2.50.1 as follows:

> Within the meaning of the preceding instructions, the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed a sexual offense other than those for which he is on trial.
> You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that a defendant committed the other sexual offense.

(RT 234.)

In Gibson v. Ortiz, 387 F.3d 812 (9th Cir. 2004), the Ninth Circuit Court of Appeals ruled that the pre-1999 version of CALJIC 2.50.01, coupled with CALJIC 2.50.1, impermissibly lessened the standard of proof required to convict on the "sexual offenses" which were similar to the uncharged "sexual offenses."

Respondent concedes that the version of CALJIC 2.50.01 used in the instant case is the same version disapproved of in Gibson. Respondent argues that the Gibson court did not find error in the concept contained in CALJIC No. 2.50.01 that a jury find a defendant guilty using propensity evidence. Rather, the Gibson court took issue with CALJIC No. 2.50.1 telling a jury that they could convict a defendant with propensity evidence proved by a preponderance. Gibson, at 822.

The Gibson court stated:

> Had the jury instructions ended with CALJIC No. 2.50.01, our inquiry would have ended with a denial of Gibson's petition. We would have assumed that the jury followed, with respect to the prior sexual offense evidence, the only standard regarding burden of proof they had received: reasonable doubt. The trial court, however, went on to instruct the jury with CALJIC No. 2.50.1, which ascribed a lesser burden of proof for evidence of previous sexual offenses. The instruction specifically referenced CALJIC No. 2.50.01 and outlined the applicable burden of proof for the prior sexual offenses.

Id.

Respondent argues that because Petitioner stipulated to the "other crimes" evidence, and the trial court instructed the jury that the other crimes evidence was "conclusively proven," there was no

7

1  fact finding by the jury required.  (RT 172, 224, 226; CT 308.)  Respondent argues that "it was as if
2  CALJIC No. 2.50.01 was never given because it was wholly irrelevant."  (CALJIC No. 17.31; CT
3  356.)  Respondent reasons that the only standard of proof the jury actually applied in this case was
4  the proper "beyond a reasonable doubt" standard, contained in several instructions, and CALJIC
5  2.50.1 was effectively absent error.  (CALJIC Nos. 2.01, 2.61, 2.90, 2.91, 17.10; RT 228, 234-239;
6  CT 319, 336-38, 346.)

7  In opposition, Petitioner argues that this case is indistinguishable from Gibson.  Petitioner
8  asserts that Respondent has mischaracterized the trial court record.  Before trial, defense counsel
9  stringently objected to the admission of the prior uncharged misconduct evidence.  (RT 17.)  Only
10 after the judge ruled that the evidence was admissible did defense counsel agree to a stipulation
11 telling the jury what Tanisha would say happened to her when she was seven-years-old if she was
12 called as a witness in the current trial.  (RT 171-172.)  Petitioner submits the purpose of the
13 stipulation was to prevent the girl from having to come forward and testify in person.  (Id.)
14 Petitioner points out that Petitioner did not stipulate as to the truth of what Tanisha would say, just
15 that she would say it if she had been called as a witness.  Petitioner argues "there is a good chance
16 that a jury, hearing a stipulation about what a teenage witness would say happened to her when she
17 was seven-years-old, would find that the stipulation was adequate to prove the conduct by a
18 preponderance of the evidence but not beyond a reasonable doubt."  (Traverse, at 6.)

19 The stipulation as read to the jury informed them what Petitioner's daughter would testify to
20 if called as a witness.  As Petitioner asserts, it appears from the record that the purpose of the
21 stipulation was to relieve Petitioner's daughter from having to actually come to court and testify, and
22 not to relieve the prosecution of its burden of proving the prior uncharged misconduct.  See RT 171-
23 72. It does appear that Petitioner stipulated to the truth of what Tanisha would say, since the
24 stipulation as read to the jury included the instruction "[t]hat is to be regarded as conclusively
25 proven."

26 Even though the stipulation conclusively proved the fact that Petitioner molested his
27 daughter, the jury was still permitted, as the Ninth Circuit was concerned in Gibson, to take that fact
28 as proven by only a propensity of the evidence and "it was then permitted to infer that [Petitioner]

8

had committed the charged offenses." Gibson, 387 F.3d at 822.  The fact that the parties stipulated to the daughter's testimony most likely made CALJIC 2.50.1 unnecessary, but the fact that is was given in spite of the stipulated testimony makes it more, rather than less, likely that the jury was mislead by the erroneous jury instructions.  In other words because there was no issue of fact regarding the truth of the prior the jury may have been more likely to confuse the burden of proof instructions.  It is undisputed that the jury was instructed with the same versions of CALJIC 2.50.01 and CALJIC 2.50.1 found improper in Gibson, and the Court finds the jury was allowed to make the same finding as that in Gibson.  As such, applying the rationale set forth by the Ninth Circuit in Gibson, the trial court's use of jury instructions CALJIC 2.50.01 and 2.50.1 the jury may have found Petitioner guilty of the charged offenses by relying on facts found only by a preponderance of the evidence.  This lessened the burden of proof under In re Winship, 397 U.S. 358 (1970), which requires the prosecution to prove every element charged in a criminal offense beyond a reasonable doubt, thereby depriving Petitioner of a "jury verdict within the meaning of the Sixth Amendment." Sullivan v. Lousiana, 508 U.S. 275, 280 (1993).  In light of this ruling, this Court is compelled to conclude that the state court's decision to use jury instructions CALJIC 2.50.01 and 2.50.1, was contrary to clearly established federal law as determined by the Supreme Court of the United States.

   B. <u>Reversal on Burglary Conviction, as Well as Lewd and Lascivious/Child Molestation Convictions</u>

Respondent argues that even if habeas relief is granted as to convictions for lewd and lascivious conduct and child molestation, it should not be granted as to the burglary count because the uncharged misconduct and the charged act of burglary are not similar.  Respondent argues that the evidence "did not show that Petitioner ever entered any inhabited dwelling with the specific intent to commit a lewd act upon a child."  At closing argument, no one suggested that the prior misconduct evidence should be used to prove the truth of the charged burglary.  Additionally, Respondent argues that the language of the jury instruction itself states that only the enumerated sexual offenses are to be considered as propensity evidence.  Respondent argues that "[i]t is unreasonable to conclude that the jury would focus on uncharged sexual offenses of sexual contact, find that Petitioner had the propensity to commit similar sexual offenses, and then use that belief to

find him guilty of burglary. The uncharged misconduct simply had no facts pertaining to burglary."

In opposition, Petitioner argues that Respondent's argument might make sense if Petitioner had been charged with a burglary that had nothing to do with intent to commit an illegal sex act, it does not make sense in the current case, where the burglary charge required the jury to find that Petitioner had the intent to commit a lewd and lascivious act upon a child. Petitioner argues that the prosecutor specified in her closing argument that for the purpose of the burglary count, the government's theory was that the felonies Petitioner intended to commit when he broke into the Morrison home were the alleged lewd and lascivious acts on the Morrison girls. Petitioner points out that the trial judge never instructed the jury not to consider the evidence regarding the prior sexual offense as to the burglary charge, but instead told the jury that the evidence could be considered as to "the crimes of which [Mr. Vaughn was] charged." RT 233.

Petitioner's argument is persuasive. The burglary conviction in this case was predicated upon a finding that Petitioner had the specific intent to commit a lewd and lascivious act upon Sarina and Monea when he entered the Morrison residence. Although it is true that the prior propensity evidence involving his daughter did not include a finding that Petitioner unlawfully entered the residence of his daughter; nonetheless, a necessary finding of a conviction for burglary included a finding that Petitioner had the specific intent to commit a lewd and lascivious act upon Sarina and Monea Morrison when he entered that residence (which obviously included use of the propensity evidence), making the propensity evidence inextricably intertwined with the burglary conviction.[4]

As Petitioner points out, in closing argument, the prosecutor argued:

> Ladies and gentlemen, typically when we think of burglary, we think of people breaking into a home with the intent to steal something or attempt to steal something while inside the house. As you will be instructed and as you are aware from the evidence in this case, there is absolutely no evidence or any argument [Petitioner] ever went in for the purpose of stealing anything or that he did steal anything but rather that he went in the house that night without consent for purposes of committing a felony *and the felony that he intended to commit lewd and lascivious acts on Sarina Morrison and Monea Morrison.*

---

[4] The Court recognizes that in Mejia v. Garcia, CV-F-03-5489 REC DLB HC, Judge Coyle found that the propensity evidence in that case was dissimilar to the other charged crimes of kidnaping and assault, and therefore reversal on those convictions was not warranted. This case is different because as stated above the burglary conviction was necessarily predicated upon a finding that Petitioner had the specific intent to *commit a lewd and lascivious act* upon Sarina and Monea Morrison when he entered the residence.

10

RT 241:25-242:7 (emphasis added.)  Subsequently, when the trial judge instructed the jury regarding the burglary count, he stated:

> Defendant is accused in Count Four of having committed the crime of burglary, a violation of Section 460(a) of the Penal Code.
> Every person who enters any inhabited dwelling house with the specific intent to commit a lewd act upon a child, which is a violation of Section 288(b) of the Penal Code, a felony, is guilty of the crime of burglary in violation of Penal Code Section 460(a).
> The definition of the crime of a lewd act upon a child, is defined in the preceding instructions to Counts One and Two.

RT 241:25 - 242:7.

The record confirms the fact that the burglary conviction was inextricably intertwined with the crimes of lewd and lascivious acts and child molestation, and the prosecutor was relieved of the burden of proving the *intent* element of the burglary charge by the combination of instructions that told the jury it need only find the propensity evidence true by a preponderance of the evidence, and that such a finding would be enough to support a guilty verdict as to "the crimes of which [Petitioner] was charged." RT 233:28.  Accordingly, the burglary conviction, as well as the two counts of lewd and lascivious acts and one count of child molestation convictions, must be reversed.

II.     Petitioner's Motion for Immediate Release

On April 24, 2006, Petitioner filed a motion for his immediate release.  (Court Docs. 56, 57.) Respondent filed an opposition on May 10, 2006.  (Court Doc. 60.)

Petitioner's only basis for his immediate release is the fact that in light of Gibson v. Ortiz, there is a strong likelihood of his success on the merits.  Respondent opposes the motion arguing that Petitioner has not shown extraordinary or exceptional circumstances, rather Petitioner merely argues that he has a strong case on the merits.  Respondent points out that even if habeas relief is granted, the state has the right to retry the case.

The Bail Reform Act does not apply to federal prisoners seeking postconviction relief. United States v. Mett, 41 F.3d 1281, 1282 (9th Cir. 1995).  Instead, Fed.R.App.P. 23 governs the issue of the release or detention of a prisoner, state or federal, who is collaterally attacking his or her criminal conviction. Id.

A district court's authority to grant bail pending the resolution of a habeas corpus proceeding

has not yet been specifically addressed by the Ninth Circuit. See In re Roe, 257 F.3d 1077, 1079 (9th Cir. 2001).[5]  In Aronson v May, 85 S.Ct. 3, (1964) (Douglas, Circuit Justice, in chambers), the petitioner sought release on bail pending appeal from the denial of his petition for writ of habeas corpus.  Justice Douglas provided the following standard for the Court to apply in determining when a habeas corpus petitioner can be released on bail:

> In this kind of case it is therefore necessary to inquire whether, in addition to there being substantial questions presented by the appeal, there is some circumstance making this application exceptional and deserving of special treatment in the interests of justice. *See Benson v. California*, 328 F.2d 159 (9th Cir. 1964).

Id. at 5.

In Benson v. California, 328 F.2d 159, 162 (9th Cir. 1964), decided prior to Aronson, the Ninth Circuit stated:

> It would not be appropriate for us at this stage of the proceeding to enlarge this petitioner on bail even if we found that the allegations of his petition for habeas corpus made out a clear case for his release.  Something more than that is required before we would be justified in granting bail. (Footnote omitted.)

Thus, Aronson requires that a petitioner demonstrate not only that his underlying claim raises

---

[5] In a very recent immigration decision the Ninth Circuit, after granting the alien's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 and directing his release from custody, the Court resolved the alien's motion for release pending appeal. The Court stated "We have authority to order such a release pursuant to Fed.R.App.P 23(b) . . . ." Nadarajah v. Gonzales, 443 F.3d 1069, 1083 (9th Cir. 2006).  The Court stated:
> Given the text of the rule, the government's argument that "this Court should not consider, let alone grant, extraordinary relief by motion where entitlement vel non to release is the very issue on appeal," is baffling: such a release is precisely what the rule contemplates. *See also In re Roe*, 257 F.3d 1077, 1080 (9th Cir. 2001) (holding, assuming that federal court had the authority to release a state prisoner on bail pending resolution of habeas proceedings, that circumstances in inmate's case did not make such release appropriate); *United States v. Mett*, 41 F.3d 1281, 1282 (9th Cir. 1994) ("Fed.R.App.P 23 governs the issue of the release or detention of a prisoner, state or federal, who is collaterally attacking his or her criminal conviction."); *Marino v. Vasquez*, 812 F.2d 499, 508 (9th Cir. 1987) ("Rule 23 establishes the authority of the federal courts to release both successful and unsuccessful habeas petitioners pending appeal.") (citation omitted).

Id. at 1083 n.5. The Court held that its determination of Petitioner's motion was governed by Maharaj v. Ashcroft, 295 F.3d 963 (9th Cir. 2002), which analyzed a motion for stay of deportation pending appeal, applying the standards for injunctive relief. Id. at 1083-84. However, because this is not an immigration case and the posture is procedurally different, this case is not applicable.

substantial questions, but also that his case presents exceptional circumstances.[6] A petitioner must demonstrate some circumstance that makes him exceptional and especially deserving of such special treatment in the interests of justice. See Aronson v. May, 85 S.Ct. at 5; Benson v. California, 328 F.2d at 162. The mere allegation of a substantial violation of constitutional rights is insufficient. In re Roe, 257 F.3d at 1080 (noting the thousands of prisoners who would have no difficulty in alleging substantial violations). In addition to these factors, the Court must take into consideration the petitioner's risk of flight and the danger to the community should he be released. See Marino v. Vasquez, 812 F.2d 499, 508-09 (9th Cir. 1987).

Exceptional circumstances have been found, in the court's discretion, when (1) the petitioner's health is seriously deteriorating, Woodcock v. Donnelly, 470 F.2d 93 (1st Cir. 1972); Johnston v. Marsh, 227 F.2d 528 (3rd Cir. 1955), (2) there is an extraordinary delay in processing the petitioner's petition, Glynn v. Donnelly, 470 F.2d at 95, or (3) the petitioner's sentence would be completed before meaningful collateral review could take place, Boyer v. Orlando, 402 F.2d 966 (5th Cir. 1968).

Petitioner recognizes that release on bond is rarely granted in a habeas corpus case. Although Petitioner has demonstrated success on the merits of his petition and the undersigned is currently recommending that the instant petition for writ of habeas corpus be granted, the grant is subject to the state's right to retry Petitioner.[7] Beyond the successfulness of the petition, Petitioner has not shown extraordinary or exceptional circumstances warranting release from custody on bail. Accordingly, Petitioner's motion should be denied.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.   The instant petition for writ of habeas corpus be GRANTED as to all of Petitioner's

---

[6] However, as Respondent submits, in Land v. Deeds, 878 F.2d 318, the test appears to be phrased in the disjunctive requiring either special circumstances or a high probability of success, whereas Benson appears to require both prongs. See also United States v. Mett, 41 F.3d 1281, 1282 (9th Cir. 1995) (same). However, as Respondent states, Land was not an en banc decision, and cannot overrule another panel, and therefore Benson appears to remain good law particularly in light of Aronson.

[7] It is noteworthy that the basis for granting the instant petition is based on legal error.

1          convictions; and

2     2.    If this recommendation is adopted, the State must, within ninety (90) days from the date of service of the District Judge's order, inform the Court whether it will retry Petitioner on the charges.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

    IT IS SO ORDERED.

**Dated:   August 28, 2006**              **/s/ Dennis L. Beck**
3b142a                                        UNITED STATES MAGISTRATE JUDGE